We'll move now to the next case of the day, which is United States v. Mitrel Anderson, Appeal Numbers 18-1870 and 18-3096, and we'll hear from Ms. Christensen first. Good morning, Your Honors. May it please the Court, Counsel. My name is Joanna Christensen and I represent the appellants in this case, Mitrel Anderson and Rayshon Roach. This is a consolidated case, two appeals. We filed separate opening briefs, but then the government filed a consolidated brief and we filed consolidated reply briefs. I'm arguing for both defendants. With respect to the condition of supervised release in this case, the federal judiciary can do better and should. We admit that after I was ordered to address this issue by this court and filed our opening briefs, this court held in Flores that in cases similar to this one, the defendants have waived any arguments regarding conditions of supervised release. While we argue in our briefs that Flores should be overturned and wrongly decided, we recognize that this is a recent decision of this court, mostly to deal with the flood of litigation regarding these issues. It's also a decision that was circulated under Rule 40E, so it has the approval of the full court, correct? Yes, Your Honor. And again, we concede that under Flores in both of these cases, the waiver provisions would apply. However, Flores left open at least an opportunity for this court to address certain conditions of supervised release where necessary or important. And given the posture of this case, that the court asked us to address this specific issue in regard to Mitrell Anderson's case and then Rayshon Roach also filed a brief, we believe this is an important issue that the court's interested in and also one that concerns a vague and overbroad condition of supervised release. The federal judiciary can do better in this condition and has done better in the remaining conditions in these cases. Both of these defendants are required to abstain entirely from alcohol. Both of them are required to undergo substance abuse treatment and periodic urine testing, which would reveal the presence of both alcohol use and drug use. Ultimately, however, the problem is that in order to comply with this condition, there are many questions that a defendant may have. Now, a condition such as don't use alcohol is very clear. Don't use alcohol. This condition, however, is preventing them from patronizing certain establishments that sell alcohol. Well, that's a very, very fuzzy issue because depending on the location, many, many establishments sell alcohol or serve alcohol. Anyone from theaters to convenience stores, grocery stores sell alcohol and it really impacts the defendant's daily living. And as this court noted in Thompson, with the Girl Scout cookie analogy, should a defendant try to see if this is legitimate behavior and risk it? He can't just ask his probation officer, which this court held was not an acceptable way to explain these conditions. Frankly, both the government and defense counsel struggle to define the parameters of these conditions as well. The government suggests that bars and taverns that are serving merely snacks are prohibited, but places that are restaurants that have extensive alcohol lists but also sell food would be fine. That's a really fine distinction for someone in Mr. Roach's position to understand. This court should also address the issue because it is ultimately the district court's duty to impose and enforce these conditions. And while the defendant and defense counsel and the government have duties as well to object to improper conditions and make those arguments in the district court, it is ultimately the district court who is enforcing these conditions. In Mr. Anderson's case, he will probably be on soon in front of the same district court judge. In Mr. Roach's case, he has a significant sentence to serve and may not appear in front of the same district court judge. We're asking a different district court judge to interpret a condition imposed in this case. And finally, the condition does not comply with the Sentencing Commission's recommendations. The Sentencing Commission, following in great part this court's precedent, found that the frequenting places where drugs are used and sold was no longer an appropriate condition. This condition contains the same problem. Patronize is used to mean frequenting, and frequenting is not something that can be explained well to a defendant. Therefore, unless the court has further questions, we believe that it should exercise its discretion under Flores and send this back for correction or deletion. Thank you. Thank you, Ms. Christensen. For the government, Ms. Rumbelow. Good morning, Your Honors. Rita Rumbelow for the United States Council. We do believe waiver applies in this case. Mr. Anderson did file an objection to the supervised release condition, but it was his objection that this shouldn't apply to me because my offense conduct did not relate to alcohol. He did not specifically file this objection in front of the district court about the vagueness of the term of supervised release. Therefore, we do think that waiver applies, and we don't think there's any compelling reason to forgive waiver, and we do not think the condition is unconstitutionally vague or overbroad, or just vague and overbroad on its own. So, we're in Wisconsin. If you have Mr. Anderson, when he's on supervised release, sooner than Mr. Roach, enter a liquor store to buy a pack of cigarettes one time, that is not going to be a violation of this condition. The condition is very clear. You can't patronize places where the primary sale of alcohol is the goal of the business. So, a movie theater, they are there to have people go to movies. The primary purpose is not the sale of alcohol. Restaurants, they want people to eat meals. Their primary purpose is not the sale of alcohol. So, it's very different when you think about patronizing in primary. What you don't want Mr. Anderson or Mr. Roach to do is to patronize a Wisconsin tavern and sit there and become friends with people, even if they're not drinking, but eventually somebody that they meet at the bar says, oh, may I buy you a drink today? It's that trigger. The reason this term of supervised release is important in these cases, even when they also have the no alcohol provision, is because frequenting, well, don't strike that. We're not going to use the term frequent. Patronizing these establishments where the primary thing is the sale of alcohol could be a trigger to a defendant like Mr. Roach or Mr. Anderson who have a history of use of alcohol, which is why the terms of supervised release are imposed to begin with. So, by avoiding these triggers, by not having them patronize these establishments, it helps them further in their rehabilitation. Because again, it's one thing, if somebody's going to drink alcohol, they're going to drink it at their home if they don't want to be caught. But again, it's the danger, the trigger about patronizing these establishments that could eventually, potentially get a supervisee in trouble with their supervising probation officer. Now, in reality, how it works is defendants are often given many, many chances on supervised release to have their conduct conform to the terms of supervised release. And if there's any question or any potential violation, you know, I know defense counsel says, well, we can't have the probation office defining what these terms mean. It has to be the judiciary, which goes back to the government's whole point that, yes, we should stick with waiver under Flores and all the other recent cases. Because had they objected below, both Judge Peterson and Judge Conley would have had the opportunity to perhaps modify or change this language. But they didn't. Is this a standard? You practice in that district, two district judges dealing with these cases. How often is this specific provision imposed? I think it is usually, because I don't do all the cases, but in the cases I have, like the ones cited in the footnote, Smith and Scott, those are both my cases too. I think this always accompanies the supervised release condition where you should abstain from alcohol. And again, the reasoning is by adding this extra condition, it's not that it's redundant. It's not. It just helps defendants not patronize places where they could potentially, you know, cross the line and engage in the use of alcohol where maybe they otherwise wouldn't if they only, you know, go to a movie theater, go to a restaurant, don't go to the tavern, don't go to the nightclub. I think it's not vague. It's very straightforward. We know Wisconsin taverns sell a lot of alcohol. They don't serve food, rarely. Well, if there's waiver here, the defendant that has some alcohol abuse and his or her background in the next case where this particular condition is proposed, they're fully able, right, to engage in a colloquy with the district judge about this word patronizing. Yes. Ms. Christensen makes some fair points about it. I mean, I don't have any idea, for example, whether a TGI Friday's is a place that fits or not. And if I was on supervised release and I had this condition, I'd have a bunch of concerns in my mind about can I go in and not go to the bar, of course, but can I go in and, you know, meet a friend for dinner? A place like that sells a lot of beer.  Other establishments, though, I think that's their point. I mean, I think your better ground to stand on is the waiver ground, and Ms. Christensen's done a pretty good job of raising a bunch of questions about what this means, and I hope that the defense bar is listening to her and thinking about it in the next round of cases. That's exactly what should happen, is here the court should uphold the waiver argument that the government has made and, again, is consistent with Flores and all the other recent cases, and then the next case where this is proposed, the next defense counsel says either Judge Peterson or Judge Conley, may we please visit this term? May we clean up the language? May we do this? And there's nothing that then prohibits them from modifying those conditions, if they're acceptable to all, modifying them in the future, because it should be with the district court, but it certainly should not be on remand in these two cases because of the failure to object. The judges didn't get the opportunity to do that here, and it can be done in the future. So I ask that you affirm. In your experience, have you found a circumstance in which there might have been a fraud or a white-collar conviction in which there was a gambling addiction, and there might have been a supervised release condition to stay out of a casino? I'm trying to think through analogs to the temptation question, which you argued. For the record, I don't do white-collar fraud cases, but just having been a prosecutor for 25 years, I would say that that would be an appropriate condition of supervised release. It is to try to help people not put themselves in situations that will trigger their addictions, and to not have them go into casinos, then that would serve the purpose of rehabilitation. That's what the purpose is, because using that gambling example, somebody could, just like with drinking, you could sit in your home, any defendant on supervised release who has that condition of no gambling could call a poker game in their house any given night. A probation officer's not going to know that, but if that same probationer is on frequency in casinos, then that is alarming, because that is a trigger, and so that's why it would be an appropriate condition. If there are no further questions, I ask that you confirm. Okay. Thank you, Ms. Rumbelow. Thank you. Ms. Christensen, rebuttal? Thank you, Your Honor. I think the analog to temptation, there's an, the Adkins case addressed the sexually stimulating material, sexually explicit material, that that was too broad, because yes, it does trigger some sex offenders to perhaps go out and offend again, but the language was too broad, because it does not include limitations that the defendant understood. In that case, it talked about billboards that are sexually explicit. You can't avoid those things. The same thing with alcohol billboards. If you stay at home and you watch nearly anything on TV, there's going to be an alcohol ad, particularly during sporting events. And here we've got four, let's say relatively concrete examples of places that the defendant is not to go, and then this kind of catch-all, the other establishments. If the other establishments had not been part of the supervised release, and it was just the list of taverns, etc., would that have been sufficiently particular? I don't think so, because the patronize is also part of the problem. And the government relies on this idea of the Wisconsin tavern, and I'm not from Wisconsin. I know that Ms. Rumlow is. I don't know what a Wisconsin tavern is. There are a lot of them. It sounds like something that's on every street corner, and they have very limited free snacks. I'm not sure. But if that's something that's colloquially understood by all Wisconsinites, then perhaps that's very clear. He can't go or they can't go to those things. But what's not clear is when the government provides examples of, you know, you can go to the theater, just that's not the primary sale. Everybody knows that. Or restaurants. I don't know. I can't advise my client to go to TGA Fridays, but don't go in the nature of substance abuse and addiction is that if you are an addict, you are going to search out these things regardless of triggers in ads or restaurants or bars or taverns. That just doesn't understand the trigger concept. And these defendants are going to attend substance abuse treatment, which will hopefully address those issues, and simply abstaining will also address those issues. They know they cannot drink, even if they go to a place that only has popcorn and peanuts, to socialize or to play volleyball or cornhole, whatever one plays at a Wisconsin tavern, if that's part of it. We agree the waiver issue is a problem. Flores does apply, but we do believe that this court can address the issue. It is becoming not a standard issue in every case, a standard condition in every case, but it is fairly common. The cases that are consolidated here and pending this decision are all Madison cases. I have not seen this condition outside of Madison. And the concern is that although the defense bar should be objecting to, and believe me, I have a forum in which I advise defense attorneys all the time to make these objections, and that I don't think it necessarily falls on deaf ears, but I think the focus is perhaps somewhere else. The probation officers and the district courts have listened when this court has given a directive to stop doing something. And I know for the jurisdictional leaving the jurisdiction, the court issued an opinion and sent it to all the district clerk's offices, saying, pay attention to this. And that's what makes the probation officers and the district courts pay attention, is that this court issues a directive. And perhaps it will maybe not help in this case, but in further cases they will not impose this condition. So unless the court has further questions, thank you. Our thanks to both counsel, including for the second round of dealing with this case, Ms. Christensen, and the case will be adjourned.